## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.J. and A.F.**

**No. 18-1146** (Taylor County 18-JA-24 and 18-JA-25)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother R.F., by counsel Jamella L. Lockwood, appeals the Circuit Court of Taylor County's November 28, 2018, order terminating her parental rights to J.J. and A.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary S. Nelson, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motions for an improvement period and terminating her parental rights instead of using a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 21, 2018, the DHHR filed an abuse and neglect petition alleging that petitioner's substance abuse issues prohibited her from properly caring for the children. Further, the DHHR alleged that petitioner was arrested for driving under the influence of marijuana, abused substances in the children's presence, and failed to maintain a sanitary living environment for the children. According to the DHHR, the children were regularly sent to school dirty and unkempt and missed an excessive amount of school. Additionally, the DHHR alleged that the father neglected the children due to his substance abuse, was a sexual offender, and had mental health issues and an extensive criminal history.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

On April 19, 2018, the circuit court held an adjudicatory hearing during which the father stipulated to the allegations of abuse and neglect. He admitted that he struggled with alcohol and illegal substance addictions and spent money on drugs that should have been spent on the children. He also admitted that the children had excessive absences from school and that they went to school dirty. He explained that the school provided J.J. with two coats, but that the coats were lost, so J.J. was sent to school wrapped in a dirty comforter for warmth. He also admitted that there were domestic violence issues between him and petitioner and that he recently attempted to commit suicide by wrecking petitioner's car. He also testified that he and petitioner smoked marijuana frequently in the children's presence, including in the car while the children were with them.

Next, petitioner admitted that there were times that the children went to school dirty and admitted that she was arrested for driving under the influence of marijuana. However, according to petitioner, she was pulled over for swerving on an icy road and did not smoke marijuana before driving. She further explained that, although she tested positive for marijuana at the time of her arrest, it was because she smoked marijuana the previous weekend. Petitioner testified that she smoked marijuana only three times in her life and denied ever smoking in the children's presence. The circuit court reminded petitioner that during forensic interviews the children disclosed that petitioner and the father went into their bedroom to smoke and "came out acting silly." However, petitioner continued to deny that she smoked marijuana and stated she did not know why the children would make those statements. When questioned about the children going to school dirty, petitioner denied responsibility and testified that they may have fallen and gotten dirty before school. Petitioner denied any form of abuse or neglect of the children and stated, "I do not feel in my heart that I have done any abuse."

The DHHR then presented the testimony of the children's principal who testified that when the children were in the care of their parents, they came to school dirty every day and had an offensive odor about them. She explained that A.F. cleaned herself when she arrived at school and that J.J.'s teacher and school counselor would help him wash his face and comb his hair. They also washed his clothes. She further testified that the children's appearances and smell caused them to be ridiculed at school and adversely affected their emotional well-being. The principal also testified that the children had excessive absences from school. The majority of the absences were unexcused, and the children were also often tardy for class. Lastly, the principal testified that six-year-old J.J. often urinated and defecated in his pants at school. However, after the child was placed with his aunt, he did not have any more accidents. The DHHR next presented the testimony of the police officer who arrested petitioner for driving under the influence of marijuana on February 8, 2018. He testified that he initiated the stop because petitioner was driving in the wrong lane toward him. He explained that petitioner admitted to smoking marijuana earlier that day and observed that petitioner showed signs of impairment such as "slurred speech, glassy eyes, pinpoint pupils, and droopy eyes." The officer also testified that petitioner failed three field sobriety tests and that he found marijuana in the vehicle.

Finally, the children's aunt testified that she had been caring for the children since their removal from the parents. She testified that she picked up the children after petitioner was arrested on February 8, 2018. She explained that she also saw petitioner that day, and that petitioner was "so impaired that she could not carry on a conversation." The children's aunt further explained that she had concerns about the filthy conditions of the family's home. She described the home as

2

smelling "offensive . . . generally of soiling and defecation." She further explained that when the children came to live with her, it was clear that they did not bathe regularly and did not think that bathing was something they needed to do. The children's aunt also testified that A.F. reported that she was sexually abused by an older male child twice and told petitioner that the abuse occurred. However, petitioner told the child not to talk about the abuse.

Following the presentation of testimony, the circuit court found that petitioner was "absolutely untruthful" and that she denied any abuse and neglect despite overwhelming evidence that she abused and neglected the children by abusing substances and failing to provide proper hygiene, among other things. The circuit court also found that petitioner failed to protect A.F. and provide her with proper care following her reported sexual abuse. The circuit court noted that it was disturbed by petitioner's lack of emotional reaction when testimony was offered concerning the sexual abuse of the child. The circuit court found that petitioner failed to acknowledge the conditions of abuse and neglect and denied petitioner's motion for a post-adjudicatory improvement period.

On June 19, 2018, the circuit court held a dispositional hearing and addressed the DHHR's motion to terminate petitioner's parental rights as well as petitioner's motion for a post-dispositional improvement period. During the proceedings, the DHHR provided petitioner with parenting services and random drug screens, which petitioner complied with. However, the DHHR presented testimony that throughout the proceedings, and even at a multidisciplinary treatment team ("MDT") meeting one day before the dispositional hearing, she continued to deny that she abused or neglected the children. She was also argumentative and combative toward the foster parent during the MDT meeting. Nevertheless, petitioner testified at the dispositional hearing that she just realized that she did abuse and neglect the children and was "willing to do or work on whatever she needed to work on." However, on cross-examination, petitioner again testified that she only used marijuana three times in her life and denied that she was driving under the influence on the day she was arrested. Petitioner also testified that A.F. disclosed that a boy kissed her rather than sexually abused her and that she took the child for medical treatment after she was kissed, but did not keep a record of said medical treatment. Additionally, petitioner testified that the children were "always properly washed" and that the odor complained of may have been the firewood burned in the home and that she did her best to keep the children's clothes clean. When asked what she needed to do to improve the conditions of her home, petitioner replied that she needed to stop burning firewood and have a better yard for the children. Petitioner denied that the home was filthy or smelled of feces. Lastly, petitioner testified that all of the children's absences from school were medically necessary, that she and the father tried not to argue in front of the children, and that the father's mental health issues did not affect the children.

At the conclusion of the dispositional hearing, the circuit court found that petitioner lacked insight into the issues of abuse and neglect and her continued denial of any issues rendered her incapable of complying with a post-dispositional improvement period or remedying the conditions of abuse and neglect. The circuit court further found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of petitioner's parental rights was in the children's best interests. Accordingly, the circuit court denied petitioner's motion for a post-dispositional improvement period and terminated petitioner's

parental rights in its November 28, 2018, dispositional order.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

In her first assignment of error, petitioner argues that the circuit court erred in denying her motions for a post-adjudicatory improvement and a post-dispositional improvement period. In support, petitioner asserts that she "recognized drug usage, domestic violence, and cleanliness of her children and her home." She also contends that she participated in drug testing, visitations, and parenting and adult life skills classes during the proceedings. We do not find petitioner's argument persuasive. West Virginia Code § 49-4-610 provides that the circuit court may grant a parent a post-adjudicatory improvement or post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Further, we have held that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Moreover, we have held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). While it is true that petitioner participated in services, throughout the entirety of the proceedings she failed to acknowledge or take

---

[2]J.J.'s biological father died before the abuse and neglect petition was filed. The circuit court terminated A.F.'s biological father's parental rights to A.F. and his custodial rights to J.J. According to respondents, the permanency plan for the children is adoption in their current kinship placement.

responsibility for the issues of abuse and neglect. Although petitioner testified at the dispositional hearing that she had a realization about the issues of abuse and neglect, as recently as the day before the dispositional hearing at her MDT meeting petitioner denied the conditions of abuse and neglect. Further, contrary to her arguments on appeal, petitioner testified during the dispositional hearing that she did not have a drug problem and that she smoked marijuana only three times during her life and never smoked in front of the children. This was in spite of the father's testimony that the couple smoked in the children's presence, including in the car with the children. Petitioner also failed to recognize that other testimony also demonstrated that she was under the influence of marijuana on the day of her arrest.

In regard to the cleanliness of the home and the children, petitioner blamed the smell of the children on her wood-burning stove and denied any other cleanliness issues. Petitioner denied that the home was filthy. However, the record shows that the children did not bathe regularly and were often filthy when they arrived at school. Petitioner also failed to acknowledge the children's lack of appropriate winter clothing. Petitioner minimized the domestic violence issues and stated at the dispositional hearing that she and the father would occasionally argue, but tried not to argue in front of the children. Therefore, while petitioner did participate in services during the proceedings, her failure to acknowledge the issues of abuse and neglect demonstrates that an improvement period would have been futile. We find no error in the circuit court's denial of petitioner's motions for an improvement period.

Petitioner also argues that the circuit court erred in terminating her parental rights because she admitted to the allegations of abuse and neglect, "expressed a desire to remediate the findings of abuse and neglect, and participated in services to improve the situation." We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The evidence discussed above also supports the termination of petitioner's parental rights. As discussed, petitioner failed to acknowledge the conditions of abuse and neglect throughout the proceedings. While petitioner argues that she did acknowledge the abuse and neglect issues, the extent of her acknowledgements were that she smoked marijuana three times in her life and that the children may have smelled because she burned wood in the home. She also testified at the dispositional hearing that she took A.F. to the hospital for treatment following her disclosure that she was kissed by a boy, but has no record of any hospital visit. Petitioner failed to acknowledge that her home was deplorable and that the children were filthy and improperly clothed when they attended school. Petitioner denied any drug problems and denied that she smoked marijuana on the day that she was arrested for driving under the influence, despite the fact that she failed three field sobriety tests and the officer found marijuana in the car. This evidence clearly supported the circuit court's findings that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of petitioner's parental rights was in the children's best interests. Further, while petitioner argues that she had a

bond with the children and that the circuit court should have granted her a less-restrictive dispositional alternative, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Therefore, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 28, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  May 24, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison